WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Marshall Spears,<br><br>            Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>            Respondents. | No. CV-00-01051-PHX-SMM<br><br><u>DEATH PENALTY CASE</u><br><br>**ORDER** |

The case is before the Court on remand from the Ninth Circuit Court of Appeals. (Doc. 140.) Pursuant to the remand order, this Court ordered Spears to file motion for a stay to exhaust his "toolmarks" claim in state court. (Doc. 141.) On March 30, 2016, Spears filed his Motion to Stay for Exhaustion. (Doc. 145.) Respondents filed a response in opposition, and Spears filed a reply. (Docs. 150, 151.) For the reasons set forth herein, the motion is denied.

## **BACKGROUND**

In 1992, Spears was convicted of first-degree murder and sentenced to death. The following facts are taken from Arizona Supreme Court opinion affirming the conviction and sentence. *State v. Spears*, 184 Ariz. 277, 282–83, 908 P.2d 1062, 1067–68 (1996).

On January 2, 1992, Spears flew from San Diego to Phoenix, using a one-way ticket purchased by the victim, Jeanette. Spears brought his 9mm Beretta handgun with him. Jeanette obtained $2200 in cash advances, and had her truck title notarized, making it readily transferable.

On January 4, Spears drove back to California in Jeanette's truck. He lied to his live-in girlfriend Joann about where he obtained the vehicle. Spears also had guns belonging to Jeanette and almost $1000 in cash.

Jeanette's body was found on January 19. She died from a gunshot wound to the back of her head with a medium or large caliber bullet. On January 30, police discovered a 9mm shell casing at the scene. Forensic analysis linked the shell to Spears's 9mm Beretta handgun.

San Diego deputies took Spears into custody on January 25. He was driving Jeanette's truck. In the glove compartment, they found the title that Jeanette had notarized on January 3. On the back of that document Spears' name was written in the space designated for the purchaser to whom the title was being reassigned.

A jury found Spears guilty of first-degree murder and theft. Following an aggravation/mitigation hearing, the trial judge found one aggravating factor—that Spears had killed Jeanette for pecuniary gain, under A.R.S. § 13–703(F)(5). *Spears*, 908 P.2d at 1068. The judge found Spears' mitigation insufficiently substantial to call for leniency, and sentenced him to death. The Arizona Supreme Court affirmed Spears's conviction and death sentence on direct appeal. *See id.* at 1081. Spears filed a post-conviction relief ("PCR") petition, which the trial court denied without an evidentiary hearing. The Arizona Supreme Court denied review.

Spears filed an amended habeas corpus petition in this Court in July 2003. (Doc. 79.) The Court denied relief (Docs. 120, 134) and Spears appealed. On September 9, 2010, before filing his opening brief with the Ninth Circuit Court of Appeals, Spears filed a Motion to Stay Proceedings, seeking to stay his appeal while he pursued post-conviction relief in state court on a claim involving newly-discovered evidence. (Ninth Cir. No. 09-99025, Dkt. 17.) The claim alleged Spears's conviction and sentence were based on faulty ballistics, or "toolmarks," evidence, in violation of his due process rights.[1]

---

[1] As used here, the term "toolmarks" refers to the marks made on shell casings when the bullets are fired.

The Ninth Circuit referred the stay motion to the panel assigned to Spears's appeal. (*Id.*, Dkt. 18.) Two years later, on April 16, 2012, Spears moved to remand his case to this Court to consider several claims under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).[2] (*Id.*, Dkt. 44.) Four years later, in 2016, the Ninth Circuit granted this limited remand. (*Id.*, Dkt. 58.) The court denied Spears' motion to stay federal proceedings for exhaustion of the toolmarks claim in state court "without prejudice to the filing of a motion for a stay in the district court." (*Id.*) This Court ordered briefing on the issue, which is now complete.

## **DISCUSSION**

District courts have the authority to issue stays, and the AEDPA does not deprive them of that authority.[3] *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005). A stay is appropriate where the court has determined that good cause exists for the petitioner's failure to exhaust in state court, that the unexhausted claim is potentially meritorious, and that the petitioner acted with reasonable diligence. *Id.*

"[G]ood cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify" his failure to exhaust the claim in state court. *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014). However, "even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Rhines*, 544 U.S. at 277–78.

Spears seeks a stay so that he can return to state court and exhaust his claim challenging the testimony of the State's ballistics expert, Jon Kokanovich. At Spears's trial, Kokanovich, Director of the Department of Public Safety Crime Lab, testified about the points of comparison between markings on the shell casing found at the murder scene and a sample shell casing fired from Spears's Beretta. (RT 12/3/92 at 845–60.) He

---

[2] *Martinez* holds that the ineffective assistance of post-conviction counsel can serve as cause for the procedural default of ineffective assistance of trial counsel claims. 132 S. Ct. at 1309.

[3] Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254.

- 3 -

described the various markings and characterized the comparisons as "excellent." (*Id.* at 853.) He testified that in his opinion the shell was fired by Spears's Baretta. (*Id.* at 860.)

Spears now challenges that testimony with new evidence in the form of a 2009 report by the National Academy of Sciences ("NAS"), *Strengthening Forensic Science in the United States: A Path Forward*. According to Spears, "The report lays bare the scientifically unsupported premise that each firearm imparts individual, unique characteristics . . . to bullets and shell casings cycled through the firearm." (Doc. 145 at 2.) Spears also relies on a report prepared in 2010 by William Tobin, a metallurgist, who updated his report in 2016. Tobin opines that "the basic premises of toolmark identifications have not been scientifically established" and that Kokanovich's "testimony as to inferences or individuation, or other conclusions implying an aura of infallibility or precision generally associated with scientific endeavor, is scientifically unfounded." (*Id.*, Ex. A at 1, 35.)

In support of his request for a stay, Spears argues that he has available remedies in state court under Rule 32 of the Arizona Rules of Criminal Procedure. Rule 32.2h provides exceptions for certain claims that might otherwise be precluded. Under Rule 32.1(e), a claim is not precluded where "[n]ewly discovered material facts probably exist and such facts probably would have changed the verdict or sentence." Rule 32.1(h) provides an exception to preclusion where "[t]he defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty." Ariz. R. Crim. P. 32.1(h).

Respondents contend that Spears has not shown good cause for a stay. They argue that Rule 32.1(e) and (h) are inapplicable and therefore the toolmarks claim remains procedurally defaulted. They also note that the only way for the claim to be presented to this Court is through an amended habeas petition. Respondents contend, however, that amendment is futile because the toolmarks claim is untimely and does not relate back to any timely habeas claims. Respondents' arguments are well taken.

1. <u>The claim is procedurally defaulted</u>

   *a.     The evidence is not "newly discovered"*

Spears contends that the NAS Report constitutes newly discovered material facts that probably would have changed the verdict under Rule 32.1(h).

Rule 32.1(e) sets forth the requirements for obtaining post-conviction relief based on newly discovered evidence:

> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.

Respondents argue that neither the 2009 NAS Report nor Tobin's report is newly-discovered evidence. They contend that while the reports themselves are new, the underlying criticisms of toolmark identification are not. The Court agrees.

The parties cite *State v. Bilke*, 162 Ariz. 51, 53, 781 P.2d 28, 30 (1989), and *State v. Amaral*, 239 Ariz. 217, 368 P.3d 925, 929 (2016), *petition for cert. filed* (May 4, 2016) (No. 15-9187). In *Bilke*, the Arizona Supreme Court held that evidence the defendant suffered from PTSD was "newly-discovered." 162 Ariz. at 53, 781 P.2d at 30. The condition was present at the time Bilke committed the offenses, but "his PTSD was not diagnosed until well after his trial and was not a recognized mental condition at the time of his trial." *Id.* Spears relies on *Bilke* for his argument that the NAS Report is newly-discovered evidence.

In *Amaral*, the defendant was a minor who pleaded guilty to two counts of first-degree murder and received consecutive life sentences. 368 P.3d at 927. On appeal, he noted that recent advances in juvenile psychology and neurology demonstrated that juveniles act more impulsively, overemphasize rewards and underemphasize consequences, are more susceptible to negative influences, have less-fixed personalities, and are more likely to grow out of their risk-taking behavior. *Id.* at 929. The Arizona

1  Supreme Court rejected the argument that this research constituted newly-discovered
2  evidence. *Id.* at 929–30. The court explained that "[t]he advances in juvenile psychology
3  and neurology offered by Amaral merely supplement then-existing knowledge of juvenile
4  behavior that was considered at the time of sentencing ." *Id.* at 930. The court concluded
5  that "the behavioral implications of Amaral's condition, in contrast to Bilke's, were
6  recognized at the time of his sentencing; that our understanding of juvenile mental
7  development has since increased does not mean that the behavioral implications of
8  Amaral's juvenile status are newly discovered." *Id.*

The NAS Report more closely resembles the new research at issue in *Amaral*. Additional research has been carried out which challenges the ability of toolmark analysis to support claims of uniqueness or individuation. This increased understanding of the science behind toolmark analysis does not mean that the conclusions of the NAS Report, or Tobin's discussion of those conclusions, are newly-discovered evidence. Unlike the PTSD diagnosis in *Bilke*, criticism of toolmarks analysis existed at the time of Spears's trial. *See Amaral*, 368 P.3d at 929–30.

As Respondents note, other courts have concluded that the findings of the NAS Report do not constitute new evidence. *See Rues v. Denney*, No. 5:09-CV-06056-DGK, 2010 WL 1729181, at *2 (W.D. Mo. Apr. 29, 2010), *aff'd*, 643 F.3d 618 (8th Cir. 2011) ("While this particular report may be new, the arguments it advances are not. The gist of the report—that forensic methodologies have not been sufficiently studied in peer reviewed journals to be accepted as scientifically accurate—is not new."); *Foster v. State*, 132 So. 3d 40, 72 (Fla. 2013) (reviewing NAS Report and explaining that "new opinions" or "new research studies" such as those contained in the report are not newly discovered evidence).

Respondents next argue that the NAS Report and Tobin's opinions constitute impeachment evidence and would not "probably have changed the verdict." Ariz. R. Crim. P. 32.1(e)(3). Again, the Court agrees.

Courts have noted that the NAS Report did not wholly repudiate toolmark identification. *See Rice v. Gavin*, No. CV 15-291, 2016 WL 3009392, at *9 (E.D. Pa.

Feb. 18, 2016), *report and recommendation adopted,* No. 15-CV-291, 2016 WL 1720433 (E.D. Pa. Apr. 29, 2016). The NAS Report focused on the challenges and limitations faced by a number of forensic science disciplines, including autopsies and medical examinations, DNA analysis, fingerprint analysis, toolmark and firearms identification, and several others. It identified deficiencies in the forensic sciences and concluded that the forensic identification disciplines, with the exception of DNA analysis, lack sufficient grounding in scientific research to verify the accuracy and validity of their methodologies. NAS Report, *Strengthening Forensic Science in the United States: A Path Forward,* at 12–13, 87. With respect to toolmark and firearms identification, the Report found that the field suffers from certain "limitations," including the lack of sufficient studies to understand the reliability and repeatability of examiners' methods and the inability "to specify how many points of similarity are necessary for a given level of confidence in the result." *Id.* at 154. According to the Report, "[a] fundamental problem with toolmark and firearms analysis is the lack of a precisely defined process." *Id.* at 155. In its "Summary Assessment" of Toolmark and Firearms Identification, the Report concluded:

> The committee agrees that class characteristics are helpful in narrowing the pool of tools that may have left a distinctive mark. Individual patterns from manufacture or from wear might, in some cases, be distinctive enough to suggest one particular source, but additional studies should be performed to make the process of individualization more precise and repeatable.
> . . . .
> Overall, the process for toolmark and firearms comparisons lacks the specificity of the protocols for, say, 13 STR DNA analysis. This is not to say that toolmark analysis needs to be as objective as DNA analysis in order to provide value.

*Id.* at 154, 155.

Notwithstanding the concerns raised in the NAS Report, courts have continued to find toolmark evidence admissible. *See United States v. Cazares*, 788 F.3d 956, 988 (9th Cir. 2015) (collecting cases); *United States v. Otero*, 849 F. Supp. 2d 425, 438 (D.N.J. 2012), *aff'd*, 557 F. App'x 146 (3d Cir. 2014); *Rice*, No. CV 15-291, 2016 WL 3009392,

at *9–10. Therefore, although "critics of the science underlying ballistic toolmark analysis raise legitimate concerns about whether the process has been demonstrated to be sufficiently reliable to be called a 'science,'" there is widespread agreement "that it is sufficiently plausible, relevant, and helpful to the jury to be admitted in some form." *United States v. Willock*, 696 F.Supp.2d 536, 568 (D. Md. 2010).

Accordingly, despite Spears's assertion that "such testimony should not have been given at all" (Doc. 151 at 5), the NAS Report would have had no effect on the admissibility of the toolmarks evidence in his case. *See Cazares, e.g.*, 788 F.3d at 988. Moreover, the findings of the report would have had limited value as impeachment. Kokanovich's testimony about the points of comparison between the shell casings did not, in Tobin's words, "imply[] an aura of infallibility or precision generally associated with scientific endeavor." (Doc.145, Ex. A at 1, 35.) Kokanovich did not, as Spears suggests, testify that there was a conclusive, scientific match between the shells. Pointing out the subjective element in Kokanovich's conclusions, or noting the other weaknesses of toolmark analysis as identified in the NAS Report, would not have impeached Kokanovich's testimony to the degree that it would probably have changed the verdict.

As Respondents also note, a number of facts apart from the shell casing implicated Spears in Jeanette's murder. *See Spears*, 184 Ariz. at 282–83, 908 P.2d at 1067–68. Spears flew to Phoenix on a ticket Jeanette had purchased. She withdrew large amounts of cash from her accounts after Spears arrived, and Spears had a large amount of cash when he returned to California. Spears possessed Jeanette's truck, with its title made out to him, when he returned to San Diego, and he lied to his girlfriend about how he had obtained the vehicle. Spears was the last person seen with Jeannette; when her body was found, she was wearing the same shirt as when last seen with Spears. Finally, the approximate time of her death coincided with the time Spears was in Phoenix. This evidence of Spears's guilt is not affected by a new report calling into question the ability of toolmark analysis to individuate shell casings.

Because the NAS Report and the Tobin report are not new evidence, and because they would not probably have changed the verdict, Rule 32.1(e) does not apply and the claim remains defaulted.

    *b.*    *Actual innocence*

Rule 32.1(h) allows relief when the defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found him guilty of the underlying offense. The reports Spears now offers do not meet that standard. As just discussed, the information does nothing more than impeach some of the evidence presented at trial. In the face of the other trial evidence implicating him in the murder, it does not establish Spears's innocence. *See State v. Denz*, 232 Ariz. 441, 448, 306 P.3d 98, 105 (App. 2013) ("But the evidence Denz identified—the pathologist's report and various proposed character witnesses—does nothing more than contradict some of the evidence presented at trial. It does not conclusively demonstrate his innocence.").

2.    <u>The toolmarks claim does not "relate back"</u>

Under the AEDPA, a one-year statute of limitations applies to petitions for writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). Spears's toolmarks claim falls far outside that period. Accordingly, Spears's habeas petition may be amended only if his toolmarks claim "relates back" to the date of filing of the original petition; that is, if the toolmarks claim and the claims in the original petition arise out of the same "conduct, transaction or occurrence." Fed. R. Civ. P. 15(c).

An amended habeas petition does not relate back for statute of limitations purposes when it asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleading. *Mayle v. Felix*, 545 U.S. 644, 650 (2005); *see King v. Ryan*, 564 F.3d 1133, 1141 (9th Cir. 2009) ("[A] petitioner may amend a new claim into a pending federal habeas petition after the expiration of the limitations period only if the new claim shares a 'common core of operative facts' with the claims in the pending petition.") (quoting *Mayle*, 545 U.S. at 659). The requisite "common core of operative facts" comprising an "occurrence" must not be viewed at

1  "too high a level of generality"; accordingly, an "occurrence" will consist of each
2  separate set of facts that support a ground for relief. *See Mayle*, 545 U.S. at 660–61. "In
3  contrast, if a new claim merely clarifies or amplifies a claim or theory already in the
4  original petition, it may relate back to the date of the original petition and avoid a time
5  bar." *Atwood v. Schriro*, 489 F. Supp. 2d 982, 997 (D. Ariz. 2007) (citing *Woodward v.
6  Williams*, 263 F.3d 1135, 1142 (10th Cir .2001)).

   In his amended habeas petition, Spears raised two claims related to the shell
casing. In Claim 4, he alleged that the admission of the shell casing without adequate
proof of the chain of custody constituted fundamental error in violation of his rights
under the Fifth, Sixth, and Fourteenth Amendments. (Doc. 79 at 43–49.) In Claim 15(a),
he alleged that trial counsel performed ineffectively by failing to retain a fingerprint
expert to examine the shell casing. (*Id.* at 82–84.) This Court found Claim 4 procedurally
barred (Doc. 120 at 8) and denied Claim 15(a) on the merits. (Doc. 134 at 45.)

   These claims do not share a common core of operative facts with Spears's new
claim. The new claim is a challenge to the principles and methodology used by the
State's ballistics expert to identify the shell casing based its toolmarks. *See Schneider v.
McDaniel*, 674 F.3d 1144, 1151 (9th Cir. 2012) ("The core facts underlying the second
theory are different in type from the core facts underlying the first theory."); *see also
United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (holding that petitioner's
ineffective assistance of counsel claim based upon his counsel's failure to inform
petitioner of his appeal rights did not relate back to his initial claim alleging a due process
violation based on the court's failure to advise the petitioner of the same consequences).
Spears's broad critique of the field of toolmarks analysis does not "amplify or clarify" his
challenges to the chain of custody or counsel's failure to retain a fingerprint expert. The
claims are based on completely different facts and theories, and therefore, the relation
back doctrine does not apply.

Because Spears will not be able to amend his petition, a stay to exhaust the toolmarks claim would be futile. *See King*, 564 F.3d at 1141–43.

3. <u>Appointment of FPD</u>

Spears asks the Court to authorize the Federal Public Defender's office ("FPD") to represent him in state court on the tool marks claim. (Doc. 145 at 15.) The Criminal Justice Act provides for appointed counsel to represent their client in "other appropriate motions and procedures." 18 U.S.C. § 3599(e). In *Harbison v. Bell*, the Supreme Court explained that in certain circumstances it is appropriate to allow federal habeas counsel to exhaust a claim in state court during the course of the federal habeas representation. 556 U.S. 180, 190 n.7 (2009) ("[A] district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation.").

Having determined that Spears is not entitled to a stay to exhaust the toolmarks claim, the Court finds it is not appropriate to authorize the FPD to represent Spears in state court.

**CONCLUSION**

Spears's toolmarks claim remains procedurally defaulted. Amendment of Spears's habeas petition to include the claim would be futile. Therefore, Spears has not shown good cause for a stay to exhaust the claim in state court.

Accordingly,

**IT IS ORDERED** denying Spears's Motion to Stay for Exhaustion (Doc. 145).

**IT IS FURTHER ORDERED** denying Spears's request for authorization for the FPD to represent him in state court.

**DATED** this 15th day of November, 2016.

Honorable Stephen M. McNamee
Senior United States District Judge

- 11 -