**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Marshall Spears, | No. CV-00-01051-PHX-SMM |
| Petitioner, | <u>DEATH PENALTY CASE</u> |
| v. | **ORDER** |
| Ryan Thornell, et al., | |
| Respondents. | |

On remand from the Ninth Circuit Court of Appeals, this Court has been directed to address two sets of Petitioner Anthony Spears's habeas claims. (Doc. 140.) First, the Court is to consider whether, in light of intervening law, including *Martinez v. Ryan*, 566 U.S. 1 (2012), relief is warranted on Claim 15(c) (alleging ineffective assistance of trial counsel—mitigation) and whether reconsideration is warranted with respect to Claim 15(d) (ineffective assistance of trial counsel—pecuniary gain aggravating circumstance). Next, the Court is to consider whether, in light of *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc), relief is warranted on Claim 12 (causal nexus error at sentencing by the trial court) or Claim 14 (causal nexus error by the Arizona Supreme Court). (Doc. 140.) Briefing on these issues is complete. (Docs. 163, 169, 172.) In his supplemental brief addressing *Martinez* and *McKinney*, Spears also requested evidentiary development, which Respondents opposed. (Docs. 163, 169.)

While those issues were pending before the Court, the United States Supreme Court decided *Shinn v. Ramirez*, 596 U.S. 366 (2022). This Court granted Spears' request for

supplemental briefing addressing the impact of *Ramirez* on the remanded claims. (Doc. 191.) In his brief, Spears requests a stay while he pursues litigation of the claims in state court. (Doc. 195.) Respondents oppose a stay.[1] (Doc. 198.)

## BACKGROUND

In 1992, Spears was convicted of first-degree murder and sentenced to death. The following facts are taken from Arizona Supreme Court opinion affirming the conviction and sentence. *State v. Spears*, 184 Ariz. 277, 282–83, 908 P.2d 1062, 1067–68 (1996).

On January 2, 1992, Spears flew from San Diego to Phoenix, using a one-way ticket purchased by the victim, Jeanette. Spears brought his 9mm Beretta handgun with him. Jeanette obtained $2200 in cash advances and had her truck title notarized, making it readily transferable.

On January 4, Spears drove back to California in Jeanette's truck. He lied to his live-in girlfriend Joann about where he obtained the vehicle. Spears also had guns belonging to Jeanette and almost $1000 in cash.

Jeanette's body was found on January 19. She died from a gunshot wound to the back of her head with a medium or large caliber bullet. On January 30, police discovered a 9mm shell casing at the scene. Forensic analysis linked the shell to Spears's 9mm Beretta.

San Diego deputies took Spears into custody on January 25. He was driving Jeanette's truck. In the glove compartment, they found the title that Jeanette had notarized on January 3. On the back of the document Spears's name was written in the space designated for the purchaser to whom the title was being reassigned.

Spears, who denied any involvement in the crimes, was found guilty of first-degree murder and theft. Following an aggravation/mitigation hearing, the trial judge found one aggravating factor—that Spears had killed Jeanette for pecuniary gain, under A.R.S. § 13-

---

[1] In September 2023, the state court granted Spears' motion to amend his successive petition for post-conviction relief. (*See* Doc. 202, Ex. 1.) Spears's motion to amend in state court was filed the day after he filed the reply to his supplemental *Ramirez* brief with the request to stay. He notified this court on September 22, 2023, but has not supplemented his stay request based on the actions of the state court. The impact, if any, of the amended second PCR has not been raised and the Court does not address it.

703(F)(5). In mitigation Spears presented the testimony of a psychologist, who detailed the abuse Spears suffered at the hands of his parents and diagnosed him with childhood post-traumatic stress disorder and depression. Lay witnesses, including Spears's mother, also testified about his abusive childhood, especially the mistreatment by his father, and about Spears's positive qualities.

The judge, however, found this mitigation insufficiently substantial to call for leniency and sentenced Spears to death. The Arizona Supreme Court affirmed Spears's conviction and death sentence on direct appeal. Spears filed a post-conviction relief ("PCR") petition, which the trial court denied without an evidentiary hearing. The Arizona Supreme Court denied review.

In 2000, Spears filed a petition for writ of habeas corpus in this Court. (Doc. 1.) He filed an amended petition in July 2003. (Doc. 79.) The Court denied relief (Docs. 120, 134) and Spears appealed (Doc. 136).[2] More than two years later, in April 2012, Spears moved to remand his case to this Court to reconsider several claims under *Martinez v. Ryan*. (*Id.*, Dkt. 44.) Four years after that, in 2016, the Ninth Circuit issued its remand order, directing the Court to consider the four claims under the intervening law of *Martinez* and *McKinney*. (*Id.*, Dkt. 58; Doc. 140.)

## DISCUSSION

As noted in prior orders, Spears's habeas claims are analyzed under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, a petitioner is not entitled to habeas relief on any claim adjudicated on the merits in state court unless the state court's adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or (2) resulted in a decision that was based on an unreasonable determination of the facts in

---

[2] In September 2010, before filing his opening brief with the Ninth Circuit Court of Appeals, Spears filed a motion to stay his appeal while he pursued post-conviction relief in state court on a claim of newly-discovered evidence—an allegation that new evidence showed that Spears's conviction and sentence were based on faulty "toolmarks" evidence linking the 9mm shell to his gun. (Ninth Cir. No. 09-99025, Dkt. 17.) The Court of Appeals denied Spears's request for a stay, without prejudice to filing a motion to stay in this Court. (*See* Doc. 140.) Spears filed, and the Court denied, such a motion. (Docs. 145, 152.)

light of the evidence presented in state court. 28 U.S.C. § 2254(d). For claims not adjudicated on the merits in state court, "federal habeas review . . . is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Pursuant to 28 U.S.C. § 2254(e)(2), a federal habeas court may not hold a hearing or expand the record unless it determines that the petitioner exercised diligence in trying to develop the factual basis of the claim in state court. *See Williams (Michael) v. Taylor*, 529 U.S. 420, 432 (2000). If the failure to develop a claim's factual basis is attributable to the petitioner, a federal court may hold an evidentiary hearing only if the claim relies on (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). In addition, "the facts underlying the claim [must] be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the [petitioner] guilty of the underlying offense." *Id.*

**1.      Claims 15(c) and 15(d)**

Claims 15(c) and 15(d) allege that trial counsel performed ineffectively at sentencing by, respectively, failing to investigate and present mitigating evidence, including failing to provide the defense mental health expert with adequate information, and failing to challenge the pecuniary gain aggravating factor. Spears raised these claims during his PCR proceedings (ROA-PCR 157 at 18–21) and the state court denied them on the merits (ROA-PCR 161 at 9). The Arizona Supreme Court denied review.

            A.      Intervening law

On remand, the Ninth Circuit directed the Court to "address in light of intervening law whether relief is warranted on Claim 15(c)" and "[f]or clarity of the record" to "address whether reconsideration of Claim 15(d) . . . is warranted in light of intervening law." (Doc. 140.) As "intervening law" the Ninth Circuit cited, among other cases, *Martinez*, 566 U.S.

1, *Cullen v. Pinholster*, 563 U.S. 170 (2011), and *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc).[3] (*Id.* at 1, n.1.) With respect to Claim 15(c), the Ninth Circuit noted (1) that this Court previously denied the claim on the merits based on the state court record and the record as expanded by the new evidence presented in these habeas proceedings and (2) denied Spears's request for evidentiary development. (Doc. 140, citing Doc. 120 at 23–26 and Doc. 134 at 45–59.) With respect to Claim 15(d), the Ninth Circuit noted that this Court found the claim exhausted and denied it on the merits while finding that Claim 11, which alleged there were insufficient facts supporting the pecuniary gain factor, was procedurally barred. (Doc. 140, citing Doc. 120 at 8–12, 27 and Doc. 134 at 59–61.)

This Court denied Claims 15(c) and 15(d) under § 2254(d) in an order dated September 14, 2009.[4] (Doc. 134 at 45–61.) Chronologically, the first of the intervening cases cited by the Ninth Circuit is *Pinholster*, decided in 2011. There the United States Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181 ("[T]he record under review is limited to the record in existence at that same time, i.e. the record before the state court"). The Ninth Circuit, in turn, has held that "*Pinholster* and the statutory text make clear that this evidentiary limitation is applicable to § 2254(d)(2) claims as well." *Gulbrandson v. Ryan*, 738 F.3d 976, 993 n.6 (2013).

The next intervening case is *Martinez*, 566 U.S. 1, decided in 2012, which addressed procedurally defaulted claims of ineffective assistance of trial counsel. While *Coleman* held that ineffective assistance of counsel in PCR proceedings could not establish cause to

---

[3] The court also cited *Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013). *Nguyen* expanded *Martinez* to hold that claims of ineffective assistance of appellate counsel could be excused by the ineffective performance of PCR counsel. In *Davila v. Davis*, 137 S. Ct. 2058 (2017), the United States Supreme Court held that *Martinez* applied only to defaulted claims of ineffective assistance of trial counsel.

[4] In a prior order the Court had denied Spears's requests for evidentiary development, finding that Spears did not diligently develop the factual bases of the claims in state court and rejecting Spears's argument that the failure should not be imputed to him but to PCR counsel. (Doc. 120 at 24–25.)

excuse a claim's procedural default, the *Martinez* Court announced a "narrow exception" to that rule:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17.

Accordingly, under *Martinez* an Arizona habeas petitioner may establish cause and prejudice for the procedural default of a claim of ineffective assistance of trial counsel by demonstrating that PCR counsel was ineffective and the underlying claim of ineffective assistance of trial counsel has some merit. *See Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (citing *Martinez*, 566 U.S. at 14).

To establish "cause" under *Martinez*, a petitioner must show that PCR counsel was ineffective under the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney*, 813 F.3d 798. This requires a demonstration "that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Clabourne*, 745 F.3d at 377 (citation omitted). To establish "prejudice," a petitioner must demonstrate that his underlying ineffective assistance of trial counsel claim is "substantial" or has "some merit." *Id.*

The next intervening cases are from the Ninth Circuit: *Dickens*, 740 F.3d 1302; *Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013) (en banc); and *Woods v. Sinclair*, 764 F.3d 1109, 1138 n.16 (9th Cir. 2014). The court in *Dickens* considered an ineffective assistance of trial counsel claim that was raised in state court but later received additional evidentiary support in federal court. *Dickens* held that factual allegations not presented to a state court may render such a claim unexhausted, and thereby subject to analysis under *Martinez*, if the new allegations "fundamentally alter" the claim or place the case in a significantly

1    different and stronger evidentiary posture than it was when the state court considered

2    it. 740 F.3d at 1318–19

3        In *Dickens* the court also rejected the argument that § 2254(e)(2) barred evidentiary

4    development of *Martinez* claims in federal court, explaining that a petitioner seeking to

5    show "cause" under *Martinez* is not asserting a "claim." *Id.* at 1321 ("A federal court's

6    determination of whether a habeas petitioner has demonstrated cause and prejudice . . . is

7    not the same as a hearing on a constitutional claim for habeas relief."); *see Woods*, 764

8    F.3d at 1138 n.16 (explaining that neither *Pinholster* nor § 2254(e)(2) "categorically bar [a

9    petitioner] from obtaining such a hearing or from presenting extra-record evidence to

10   establish cause and prejudice for the procedural default. . . .").

11       Subsequently, however, in *Shinn v. Ramirez*, 596 U.S. 366, 382 (2023), the Supreme

12   Court held that in adjudicating a *Martinez* claim, "a federal habeas court may not conduct

13   an evidentiary hearing or otherwise consider evidence beyond the state-court record based

14   on ineffective assistance of state postconviction counsel" unless the petitioner satisfies the

15   "stringent requirements" of 28 U.S.C. § 2254(e)(2). Section 2254(e)(2) applies only when

16   there has been "a failure to develop the factual basis of a claim" due to "a lack of diligence,

17   or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 383

18   (quoting *Williams (Michael)*, 529 U.S. at 432). A petitioner bears "'responsibility' for all

19   attorney errors during [PCR] proceedings," including "counsel's negligent failure to

20   develop the state postconviction record." *Id.* (quoting *Williams (Michael)*, 529 U.S. at 432).

21   In such a case, a federal court may order an evidentiary hearing or otherwise expand the

22   state-court record only if the prisoner can satisfy § 2254(e)(2). *Id.*

23       B.    Analysis

24       Spears raised Claims 15(c) and (d) in his PCR petition. (ROA-PCR 157.) This Court

25   found that the PCR court's denial of the claims was based on neither an "unreasonable

26   determination of the facts" nor an "unreasonable application of controlling federal law."

27   (Doc. 134 at 59, 61.)

28

1    Relying on *Dickens*, Spears now argues that the claims were procedurally defaulted

2    in state court because they have been "fundamentally altered" by new factual allegations

3    raised in federal court. (Doc. 163 at 26.) Therefore, according to Spears, the claims' default

4    is to be analyzed for cause and prejudice within the framework of *Martinez*. Spears

5    contends that under that framework, PCR counsel's ineffective performance excuses the

6    default. He further contends that under *Dickens*, *Woods*, and other Ninth Circuit authority,

7    he is entitled to evidentiary development, notwithstanding *Pinholster* and § 2254(e)(2), in

8    order to establish "cause" under *Martinez*. Finally, he argues that he was diligent in state

9    court and therefore can overcome the strictures of § 2254(e)(2). These arguments fail.

10    This Court, in addressing Claims 15(c) and (d) in previous orders, did not have the

11    benefit of the *Pinholster* decision, so in addition to analyzing the claims based on the state

12    court record, the Court also considered the new evidence Spears presented in these habeas

13    proceedings. Nevertheless the Court found that the claims did not satisfy *Strickland*. (Doc.

14    134 at 51–59.)

15    The new evidence Spears presented in support of Claim 15(c) included the opinion

16    of a psychiatrist, Dr. Arturo Silva, who diagnosed Spears with PTSD, factitious disorder,

17    depressive disorder, and ADHD; the results of a quantitative electroencephalogram

18    (qEEG) purportedly showing "evidence of insult to the brain"; and declarations from

19    family and friends discussing Spears's childhood abuse. (Doc. 134 at 51–53.) As discussed

20    next, the Court now concludes that under *Dickens* this new evidence did not fundamentally

21    alter the claim raised in state court or place the case in a significantly different and stronger

22    evidentiary posture than it was when it was decided by the state court. *Dickens*, 740 F.3d

23    at 1318–19.

24    In his state court petition, Dickens argued that counsel provided ineffective

25    assistance by failing to direct the work of a court-appointed psychologist and failing to

26    adequately investigate Dickens's background for evidence of impairment. In his federal

27    habeas petition, however, Dickens included factual allegations suggesting that he suffered

28    from Fetal Alcohol Syndrome and organic brain damage. The Ninth Circuit found that "the

1  new allegations and evidence Dickens presented to the federal district court fundamentally

2  altered Dickens's previously exhausted [ineffective assistance of counsel] claim." *Id.* at

3  1319 ("[T]he new evidence creates a mitigation case that bears little resemblance to the

4  naked *Strickland* claim raised before the state courts. There, Dickens did not identify any

5  specific conditions that sentencing counsel's allegedly deficient performance failed to

6  uncover.").

7       In Spear's case, by contrast, the claims raised in the PCR proceedings and Claims

8  15(c) and (d) of his habeas petition are not fundamentally different. In his PCR petition,

9  for example, Spears alleged that trial counsel's investigation into his mental health was

10 inadequate because counsel failed to ask his psychological expert, Dr. Mickey McMahon,

11 to explain how Spears's mental impairment—namely his PTSD, as diagnosed by Dr.

12 McMahon based on the abuse Spears suffered as a child—played a role in his behavior at

13 the time of the crime. [5]  (ROA-PCR 157 at 18–19.) Spears further argued that Dr. McMahon

14 should have required Spears to undergo neurological testing in search of potential

15 mitigation. (*Id.* at 19–20.) The PCR court denied the claim, noting that Spears's defense at

16 trial was that he did not commit the murder and therefore it was "incongruous" for him to

17 allege ineffective assistance based on counsel's failure to present evidence of his mental

18 state at the time of the murder. (ROA-PCR 161 at 9.) The court also found that Spears had

19 "fail[ed] to indicate what mitigating evidence should have been presented" that was not

20 presented. (*Id.*)

21       In Claim 15(c) of his amended habeas petition, Spears alleged that counsel

22 performed ineffectively by failing to investigate and present evidence that prior to and at

---

24  [5] As the Court noted in its order denying Claim 15(c), Dr. McMahon's testimony at
25  Spears's sentencing described Spears's difficult childhood, which included beatings by his
   alcoholic father, and the results of mental health testing that showed a lack of future
26  dangerousness. (Doc. 134 at 46.) Along with childhood PTSD, Dr. McMahon diagnosed
   Spears with depression, which was being treated with medication. (*Id.*) According to Dr.
27  McMahon, Spears's PTSD may be re-triggered by trauma, which could cause Spears to act
   impulsively and reflexively. (*Id.*) Dr. McMahon did not believe that Spears suffered from
   neurological problems. (*Id.*) He testified that, although Spears engaged in attention-seeking
28  behavior and was insecure, he was not chronically violent and likely would not be violent
   in prison. (*Id.*)

the time of the offense he suffered from the conditions identified by Dr. Silva and that his behavior was affected by these conditions. (Doc. 102 at 66–67.) Spears further alleged that counsel should have investigated his history of head injuries, which would have led to "evidence of frontal lobe dysfunction which would manifest behaviorally by disregulation [sic] of emotions and behavior, impulsivity and poor judgment." (*Id.* at 67, 73–74.) Finally, Spears alleged that counsel failed to interview additional witnesses who could have provided information about the violence and abuse in the Spears family and Spears's history of "fabricating stories about himself." (*Id.* at 69, 72–73.)

After filing his amended habeas petition, Spears moved for evidentiary development in support of his ineffective assistance of counsel claims. (Doc. 103.) The new evidence Spears sought to present included a report by Dr. Silva. (*Id.*, Ex. Y at 6.) Dr. Silva indicated that Spears's depressive disorder arose from childhood abuse and the end of his second marriage, and that the factitious disorder began when Spears learned as a child to tell stories in order to avoid being punished by his father. (*Id.* at 15–16.) Dr. Silva's testing did not reveal evidence of cognitive deficits, executive dysfunction, or dissociative disorder. (*Id.* at 28–30.) Because Spears continued to deny involvement in the crime, Dr. Silva could only theorize about the effect of Spears's conditions on his actions in killing Jeanette. He hypothesized that if Jeanette had threatened Spears or confronted him with his deceitfulness, Spears's PTSD and depressive order may have caused him to lose control and become violent. (*Id.* at 52–53.) If Jeanette had challenged Spears's inflated impression of himself, his factitious disorder might have led him to act in the heat of passion. (*Id.* at 53–54.) Finally, Dr. Silva suggested that Spears's ADHD disorder may have diminished his impulse control and increased his hostility. (*Id.* at 54.)

Along with Dr. Silva's diagnoses, Spears also proffered a qEEG report. (Doc. 105 at 24; Doc. 103, Ex. Y.) This testing purportedly revealed "evidence of insult(s) to the brain resulting in frontal lobe dysfunction. This finding would be behaviorially manifested by disregulation of emotions and behavior, impulsivity and poor judgement." (Doc. 103, Ex. Y at 1, 9.)

Spears also submitted declarations from family members and friends who described the abuse he suffered at the hands of his parents. (*Id.*, Ex. A–D, F, G, I, L.) His father disciplined Spears with a objects including a belt, switches, and a car antenna. (*Id.*, Ex. E–G.) Spears was a respectful and dutiful son who did what he was told and was kind to those in his extended family. (*Id.*, Ex. A–D, I, L.) Spears's father was himself physically abused as a child and grew up in a home filled with anger, violence, mental illness, and alcoholism. (*Id.*, Ex. A–E.) Spears's ex-wives and his daughter characterized him as kind, compassionate, sensitive, and musically talented. (*Id.*, Ex. K, M, R.) His second wife described his escalating use of drugs, increased anger, depression, and inability to stay employed. (*Id.*, Ex. R.) Spears's friends stated that his use of drugs hardened him. (*Id.*, Ex. H, W.)

In a 2005 order addressing the procedural status of Spears's claims, this Court found that Claims 15(c) and (d) were properly exhausted. (Doc. 120 at 11–12.) The Court also denied Spears's request for evidentiary development, finding, as relevant here, that Spears did not diligently develop the facts supporting his ineffective assistance of counsel claims in state court and noting that PCR counsel's failure to develop the record is imputed to the petitioner. (*Id.* at 23–26) (citing *Williams (Michael) v. Taylor*, 529 U.S. 420, 432 (2000)).

In its 2009 order denying Spears's amended habeas petition, this Court, applying 28 U.S.C. § 2254(d) and considering only the state court record, found that the PCR court's denial of Claims 15(c) and (d) "was not based on an unreasonable determination of the facts or application of *Strickland.*" (Doc. 134 at 51, 61.) As noted above, the Court alternatively found the claims meritless even considering Spears's new evidence. (*Id.* at 53–61). The Court found that the evidence, including Dr. Silva's opinions, was speculative, cumulative, and lacking in mitigating weight. (*Id.* at 56–59.) The Court explained that Spears's continued denial of involvement in the murder imposed limitations on the usefulness of mental health mitigation evidence. (*Id.* at 55) (citing, *e.g.*, *Wellons v. Hall*, 554 F.3d 923, 930 n.2 (11th Cir. 2009)).

The Court now reiterates that Dr. Silva's report and the declarations from friends and family supplement, but do not fundamentally alter, the claim raised in state court.[6] *See Williams v. Filson*, 908 F.3d 546, 573–76 (9th Cir. 2018) (finding that a new expert report "merely" corroborated the allegations in the state court petition and did not place the claim in a "significantly different and stronger evidentiary posture" or transform it "into a new and unexhausted claim"); *Creech v. Richardson*, 59 F.4th 372, 382, 388–89 (9th Cir. 2022) (agreeing with district court that "the proffered additional evidence of brain damage and organic factors was not sufficient to transform Creech's ineffective-assistance-of-counsel sub-claims into new claims"); *Lee v. Ryan*, 2019 WL 1932110, at \*1 (D. Ariz. May 1, 2019) (explaining that a "claim of ineffective assistance of counsel is not fundamentally altered by new factual allegations related to the specific claim raised in state court").

Claim 15(c) was decided on the merits in state court and denied by this Court under § 2254(d)(1) and (2). *Pinholster* therefore precludes this Court from considering new evidence in support of the claim. *Pinholster*, 563 U.S. at 185–86; *see Henry v. Ryan*, 720 F.3d 1073, 1093 n.15 (9th Cir. 2013) ("Given that Henry has not satisfied § 2254(d), the district court did not abuse its discretion by denying Henry's request for an evidentiary hearing."); *Wood v. Ryan*, 693 F.3d 1104, 1122 (9th Cir. 2012) ("Wood is not entitled to an evidentiary hearing or additional discovery in federal court because this ineffective assistance of counsel claim is governed by 28 U.S.C. § 2254(d)(1), as it was adjudicated on the merits in the PCR proceedings."); *see also Escamilla v. Stephens*, 749 F.3d 380, 394 (5th Cir. 2014) ("*Martinez* does not apply to claims that were fully adjudicated on the merits by the state habeas court because those claims are, by definition, not procedurally defaulted.").

Next, with respect to Claim 15(d), in state court Spears alleged in a conclusory fashion that trial counsel performed ineffectively in contesting the pecuniary gain

---

[6] Spears's more-recent request for evidentiary development includes a 2018 declaration from a clinical social worker and sociologist specializing in trauma and abuse. (Doc. 164-1, Ex. 32.) She opines that the abuse Spears suffered at the hands of his father "led him to experience characteristics of both Child Abuse Syndrome and Stockholm Syndrome. (*Id.* at 3.)

1  aggravating factor. (ROA-PCR 157 at 21.) The PCR court denied the claim, finding neither

2  deficient performance nor prejudice under *Strickland*. (ROA-PCR 161.)

4       During these habeas proceedings Spears argued that the victim's diary cast doubt

5  on the pecuniary gain factor because it showed that Spears was able to manipulate the

6  victim to obtain money and therefore had no motive to kill her. (Doc. 79 at 69–71.) In

7  Claim 15(d), Spears alleged that counsel should have used the contents of the diary to

8  challenge the pecuniary gain factor. (*Id.* at 95–96.) The Court found the claim exhausted

9  and denied it on the merits, concluding that there was not a "reasonable probability that the

10  sentencing judge would not have found the pecuniary gain aggravating factor if counsel

11  had relied on information from the diary." (Doc. 134 at 61.)

12       Like Claim 15(c), Claim 15(d) was raised in state court and denied on the merits,

13  and subsequently denied by this Court pursuant to § 2254(d)(1). (Doc. 134 at 61.)

14  *Pinholster* therefore precludes this Court from considering new evidence in support of the

15  claim. *Pinholster*, 563 U.S. at 185–86; *see Henry*, 720 F.3d at 1093 n.15; *Wood*, 693 F.3d

16  at 1122.

17       Moreover, Spears would not be entitled to relief even if the Court were to find, based

18  on *Martinez* and *Dickens*, that Claims 15(c) and (d) must be considered defaulted because

19  they have been fundamentally altered by Spear's new evidence. Under the Supreme Court's

20  decision in *Shinn v. Ramirez*, this Court is barred from considering Spears's new evidence

21  in determining whether "cause" exists for the purported default of Claims 15(c) and (d).

22  The *Ramirez* Court explained that "under § 2254(e)(2), a federal habeas court may not

23  conduct an evidentiary hearing or otherwise consider evidence beyond the state-court

24  record based on ineffective assistance of state postconviction counsel." 596 U.S. at 382.

25       According to *Ramirez*, a petitioner is at fault when PCR counsel is negligent in

26  developing the record, and therefore "a federal court may order an evidentiary or otherwise

27  expand the state-court record only if the prisoner can satisfy § 2254(e)(2)'s stringent

28  requirements." *Id.* at 384. Section 2254(e)(2) applies only when there has been "a failure

- 13 -

to develop the factual basis of a claim" due to "a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 383 (quoting *Williams (Michael)*, 529 U.S. at 432). A petitioner bears "'responsibility' for all attorney errors during [PCR] proceedings," including "counsel's negligent failure to develop the state postconviction record." *Id.* (quoting *Williams (Michael)*, 529 U.S. at 432). In such a case, a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2). *Id.* "In all but these extraordinary cases, AEDPA 'bars evidentiary hearings in federal habeas proceedings initiated by state prisoners.'" *Id.* at 1728 (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)). Spears does not attempt to meet the requirements of § 2254(e)(2).

Spears maintains, however, that despite PCR counsel's neglect, he was diligent in his own efforts to develop the facts in state court and therefore § 2254(e)(2) does not apply. (Doc. 195 at 27–29.) He notes that he retained a private investigator and provided PCR counsel with the case file and a list of mitigating issues. (*Id.* at 27.) Spears relies on *Mothershead v. Wofford*, 608 F.Supp.3d 1024 (W.D. Wa. 2002), *reversed and remanded by Mothershead v. Wofford*, 2023 WL 5928498 (9th Cir. 2023), to support this argument. (*Id.* at 29.)

In *Mothershead*, the district court found, based on the case's "unique factual record," that the petitioner was not "at fault" under *Ramirez* and *Williams* for the lack of development of the state court record and therefore *Ramirez* did not bar the court from holding an evidentiary hearing. 608 F.Supp.3d at 1031–33. The court found that the pro se petitioner made "consistent efforts to squarely present the merits of her [ineffective assistance of counsel] claim to the State courts" in her post-conviction petition. *Id.* at 1031. She requested an evidentiary hearing and supplemented the record with a declaration from her trial counsel and the preliminary report of an expert. *Id.* These efforts led to the appointment of post-conviction counsel, who repeated the petitioner's request for an evidentiary hearing but did not otherwise supplement the materials presented by the petitioner herself. *Id.* The district court held that, while counsel's efforts may have "rise[n]

1    to the level of cause to excuse the procedural default," the "otherwise sound record of
2    diligence" demonstrated that the petitioner was not "at fault" for the undeveloped record
3    and § 2254(e)(2) had no application. *Id.* at 1032.

4        On appeal, the Ninth Circuit reversed on other grounds. *Mothershead v. Wofford*,
5    2023 WL 5928498 (9th Cir. 2023). The court concluded that the district court had erred in
6    finding the ineffective assistance of counsel claim procedurally barred and not subject to
7    merits review under § 2254(d) (noting that the state court had "properly concluded that
8    'Mothershead failed to show there is a reasonable probability that the testimony of [the
9    expert] would have altered the outcome'"). *Id.* at *1. Having made that determination, the
10   court found it unnecessary to address the application of § 2254(e)(2) or *Ramirez*. *Id.*

11       This Court is not bound by the district court's decision in *Mothershead*. *See*
12   *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court
13   judge is not binding precedent in either a different judicial district, the same judicial
14   district, or even upon the same judge in a different case."). In any event, *Mothershead* is
15   factually distinguishable from Spears's case. Prior to the appointment of counsel, the
16   petitioner in *Mothershead*, representing herself, developed evidence and requested an
17   evidentiary hearing. According to the district court, this "unique" factual scenario
18   supported a finding that the petitioner was diligent, notwithstanding counsel's neglect in
19   failing to further develop the record. Spears, by contrast, was represented by counsel during
20   the PCR proceedings, and any negligence in failing to develop the state court record is
21   imputed to Spears.

22       *Ramirez* forecloses the argument that Spears is entitled to present evidence beyond
23   the state court record to prove PCR counsel's ineffectiveness. *See Creech*, 59 F.4th at 389
24   ("Because we cannot consider the evidence presented for the first time to the district court,
25   Creech's *Martinez* claim necessarily fails.") The intervening case law cited by the Ninth
26   Circuit therefore does not affect the Court's denial of Claims 15(c) and (d) on the merits.

27       Spears's requests for evidentiary development (*see* Doc. 163) are also denied
28   pursuant to *Pinholster*, because the claims were decided on the merits in state court.

- 15 -

1    Alternatively, to the extent either claim was fundamentally altered by new evidence and

2    therefore defaulted, *Ramirez* and 2254(e)(2) bar the presentation of new evidence.

3    **2.      Claims 12 and 14**

4        In Claim 12 of his amended petition, Spears alleges that the trial court failed to

5    properly consider and give weight to the mitigating evidence he presented at sentencing

6    and improperly concluded that the lone aggravating circumstance outweighed the

7    mitigating evidence presented. (Doc. 79 at 73–75.) In Claim 14, he alleges that the Arizona

8    Supreme Court committed the same violation in its independent review of his death

9    sentence. (*Id.* at 79–82.) In its order of September 2009, the Court denied these claims on

10   the merits, finding that the state courts did not improperly foreclose the consideration of

11   Spears's difficult childhood and mental health mitigation. (Doc. 134 at 38–41.)

12       A sentencer may not "refuse to consider, *as a matter of law*, any relevant mitigating

13   evidence." *Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982); *see Lockett v. Ohio*, 438 U.S.

14   586, 604 (1978). While the sentencer "may determine the weight to be given relevant

15   mitigating evidence," it "may not give it no weight by excluding such evidence from [its]

16   consideration." *Eddings*, 455 U.S. at 114–15. Applying *Lockett* and *Eddings*, the Supreme

17   Court has held that a state cannot adopt a "causal nexus" rule—that is, a rule precluding a

18   sentencer from considering mitigating evidence unless there is a causal connection between

19   the evidence and the crime. *Tennard v. Dretke*, 542 U.S. 274, 287 (2004). The sentencer

20   may, however, consider "causal nexus . . . as a factor in determining the weight or

21   significance of mitigating evidence." *Lopez v. Ryan*, 630 F.3d 1198, 1204 (9th Cir. 2011),

22   *overruled on other grounds by McKinney*, 813 F.3d at 819; *see Styers v. Ryan*, 811 F.3d

23   292, 298–99 (9th Cir. 2015) (holding that the Arizona Supreme Court did not

24   violate *Eddings* in assigning little weight to the petitioner's PTSD when it lacked a causal

25   connection to the crime).

26       In 2015 the Court of Appeals for the Ninth Circuit issued its en banc opinion in

27   *McKinney*, 813 F.3d 798. The court held that the Arizona Supreme Court, for a period of

28

more than 15 years,[7] "consistently" violated *Eddings* in its capital sentencing analysis by requiring a defendant to show a causal nexus between his proffered mitigating evidence and the crime. *Id.* at 802. The court explained:

> The decisions of the Arizona Supreme Court make clear that family background or a mental condition could be given weight as a nonstatutory mitigating factor, but only if defendant established a causal connection between the background or condition and his criminal behavior. For a little over fifteen years, the Arizona Supreme Court routinely articulated and insisted on its unconstitutional causal nexus test. . . .

*Id.* at 815.

As an example of the Arizona Supreme Court applying this causal nexus test, the Ninth Circuit cited *State v. Wallace*, 160 Ariz. 424, 427, 773 P.2d 983, 986 (1989), which held that "[a] difficult family background, in and of itself, is not a mitigating circumstance. . . . A difficult family background is a relevant mitigating circumstance if a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant's control." The Ninth Circuit explained that "[t]he [Arizona Supreme] Court could not have been clearer that, as a matter of law, nonstatutory mitigation evidence not satisfying the causal nexus test was irrelevant. This test was in direct contravention of *Eddings* and *Lockett*." *McKinney*, 813 F.3d at 814.

In considering Spears's argument that the Arizona courts imposed an unconstitutional nexus test on his mitigating evidence, the Court looks to cases applying *McKinney*. In *Greenway v. Ryan*, 866 F.3d 1094 (9th Cir. 2017), for example, the Ninth Circuit noted that: "We said in *McKinney* that the Arizona courts had 'consistently' applied the causal-nexus test. . . . We did not say, however, that Arizona had always applied it." *Id.* at 1095 (citation omitted). In *Apelt v. Ryan*, 878 F.3d 800 (9th Cir. 2017), the court discussed several "critical factors" to be considered in determining whether the Arizona Supreme Court violated *Eddings* by applying a causal nexus test in cases upholding a death

---

[7] From *State v. Wallace*, 160 Ariz. 424, 773 P.2d 983 (1989), until *State v. Anderson*, 210 Ariz. 327, 111 P.3d 369 (2005). Spears was sentenced in 1993. The Arizona Supreme Court reviewed and affirmed his sentence in 1996.

sentence. *Apelt*, 878 F.3d at 839–40. These factors include whether the trial court "state[d] a factual conclusion that any of [the petitioner's] proffered mitigation failed to affect his conduct"; whether the Arizona Supreme Court "state[d] a factual conclusion that any of [the petitioner's] proffered mitigation would have influenced him not to commit the crime"; and whether the Arizona Supreme Court cited either *Ross* or *Wallace* in reviewing the mitigating evidence.[8] *Id.* at 840.

Although the Court reviews the Arizona Supreme Court's decision, the Court may look to the decision of the sentencing judge to the degree it was adopted or substantially incorporated by the Arizona Supreme Court. *Martinez (Ernesto)*, 926 F.3d 1215, 1236 (9th Cir. 2019) (citing *McKinney*, 813 F.3d at 819). At sentencing in Spears's case, the trial court found one aggravating factor, pecuniary gain. (ROA 96 at 2.) The court then considered each of Spears's proffered mitigating circumstances. (*Id.* at 3–7.) The court found that Spears established lack of criminal history as a mitigator. (*Id.* at 3.) With respect to Spears's "difficult family history," "psychological profile," and "difficult childhood," the court noted that Spears "has produced evidence that he was physically and emotionally abused by an alcoholic father." (*Id.* at 4.) However, the court found that "[a] difficult family background in and of itself is not a mitigating circumstance. . . . A difficult family background is a relevant mitigating circumstance if a defendant can show that something in that background had an affect or impact on his behavior that was beyond the defendant's control." (*Id.*) (quoting *Wallace*, 160 Ariz. at 427, 773 P. 2d at 986). The court continued:

> Although Mr. Spears had an unhappy childhood, an abusive father, and may have suffered or may be suffering from childhood post-traumatic stress syndrome, no evidence has been presented that links even remotely how this may have impacted his behavior in late 1991 and early 1992. The defendant has no history of any neurological problems. There is nothing about the defendant's psychological history, childhood or family background that equates to a mitigating circumstance.

(*Id.*)

---

[8] *State v. Ross*, 180 Ariz. 598, 886 P.2d 1354 (1994).

The court concluded its review of the mitigating circumstances by explaining that it had:

> also considered some factors that singularly might not be mitigating but do have some mitigating value: [Spears's mother] loves her son. In addition defendant's demeanor and conduct in court and his conduct while incarcerated, the time he spent in military service and his psychological profile, taken together have some mitigating value.

(*Id.* at 6–7.)

Summarizing its findings with respect to the mitigating circumstances, the court reiterated that it had "consider[ed] the defendant's character, his propensities, and lack of a criminal record and everything that is mitigating and potentially mitigating." (*Id.* at 7.)

It is arguable that under *McKinney* and its progeny, the trial court applied an unconstitutional nexus test to Spears's evidence of a difficult family history and childhood PTSD. The court stated as a "factual conclusion" that Spears's "proffered mitigation failed to affect his conduct" and in doing so cited *Wallace. Apelt*, 878 F.3d at 840. However, the court also stated that it had "consider[ed] everything that is mitigating and potentially mitigating," indicating that it neither found the evidence "irrelevant," *McKinney*, 813 F.3d at 814, nor refused to consider it, *Eddings*, 455 U.S. at 114.

On direct appeal, the Arizona Supreme Court first discussed the trial court's assessment of Spears's difficult-childhood mitigating evidence:

> A difficult family background is not necessarily a mitigating circumstance unless defendant can show that something in his background had an effect on his behavior that was beyond his control. *See Stokley*, 182 Ariz. at 524, 898 P.2d at 473. A clinical psychologist testified that defendant suffered a physically and emotionally abusive childhood. His father drank considerably, was a strict disciplinarian, and beat defendant frequently. The psychologist diagnosed defendant with post-traumatic stress disorder that could be retriggered at any time, causing impulsive, irrational behavior. Even if this diagnosis is correct, it does not explain why defendant murdered Jeanette. Defendant's actions were planned and deliberate, not impulsive. *See Bolton*, 182 Ariz. at 314, 896 P.2d at 854. Therefore, the trial court appropriately gave defendant's background minimal mitigating weight.

*Spears*, 184 Ariz. at 293–94, 908 P.2d at 1078–79.

The court then performed its independent review of the aggravating and mitigating factors:

> we agree with the trial court's findings that defendant committed this murder in expectation of pecuniary gain and that defendant's lack of a significant prior criminal record was a mitigating factor. In addition, *we believe that the trial court appropriately gave some mitigating weight, however minimal, to defendant's difficult family background* and his good conduct. However, we find that defendant's military history is a mitigating factor whereas the trial court stated that it was of only some mitigating value. Nonetheless, we believe that this minor distinction does not require us to remand this case for resentencing because there is no new evidence to be received, *no mitigating evidence was improperly excluded*, and the mitigating evidence is not significant.

*Spears*, 184 Ariz. at 295–96, 908 P.2d at 1080–81 (emphasis added).

As with the trial court's ruling, from these passages it is unclear whether or not the Arizona Supreme Court applied an improper nexus test to Spears's evidence. The court repeated the formulation that "a difficult family background is not necessarily a mitigating circumstance unless defendant can show that something in his background had an effect on his behavior that was beyond his control" and cited two cases, *Stokley* and *Bolton*, that in turn cited *Wallace*, the case identified in *McKinney* as establishing the Arizona Supreme Court's unconstitutional causal nexus test. *State v. Stokley*, 182 Ariz. 505, 524, 898 P.2d 454, 473 (1995); *State v. Bolton*, 182 Ariz. 290, 314, 896 P.2d 830, 854 (1995). However, the court also stated that evidence of Spears's difficult family background and PTSD was entitled to "minimal mitigating weight" and "some mitigating value." *Spears*, 184 Ariz. at 294, 296, 908 P.2d at 1079, 1081. Therefore, the evidence was not excluded from the court's consideration due to a lack of causal connection to the crime. Rather, in weighing the evidence, the court took into account the lack of a nexus. *See Styers*, 811 F.3d at 298–99; *Lopez*, 630 F.3d at 1204.

The Court need not make a final determination as to whether *Eddings* error occurred because any such error, if it did take place, did not prejudice Spears. *See Martinez (Ernesto)*, 926 F.3d at 1235. Under the harmless error doctrine, which applies to violations

of *Eddings*, the question is whether the error had a "substantial and injurious effect or influence" on the court's independent review. *McKinney*, 813 F.3d at 822 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)); *Greenway*, 866 F.3d at 1100; *see Djerf v. Ryan*, 931 F.3d 870, 885 (9th Cir. 2019) (citing *McKinney*, 813 F.3d at 821–22) ("[R]elief is only available when a causal nexus error was prejudicial—that is, when it was not harmless."). If a federal habeas judge is in "grave doubt" about whether a constitutional trial error had a substantial and injurious effect or influence, the error is not harmless and "the petitioner must win." *Id.* (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436, 445 (1995)). The Court concludes that any error in Spears's case was harmless.

In *Martinez (Ernesto)*, the Ninth Circuit found that the Arizona Supreme Court had committed *Eddings* error but determined that the petitioner was not prejudiced. 926 F.3d at 1235–37. The Arizona Supreme Court had ruled that "[t]here is simply no nexus between Martinez'[s] family history and [the crime]. His family history, though regrettable, is not entitled to weight as a non-statutory mitigating factor." *State v. Martinez*, 196 Ariz. 451, 465, 999 P.2d 795, 809 (2000).

In finding the *Eddings* error harmless, the Ninth Circuit noted that the Arizona Supreme Court did in fact consider Martinez's "violent family history," not as nonstatutory mitigation but in the context of the impaired capacity aggravating factor, and "decided not to assign that family history great weight," a "conclusion that did not violate the Constitution." *Martinez (Ernesto)*, 926 F.3d at 1235. In Spears's case as well, the Arizona Supreme Court clearly "considered the family history evidence [Spears] argues they should have considered." *Id.*; *see Spears*, 184 Ariz. at 293–96, 908 P.2d at 1078–81. The state supreme court in Spears also gave his family background at least "minimal" weight where the court in *Martinez* found the evidence was "not entitled to weight." *Martinez*, 196 Ariz. at 465, 999 P.2d at 809.

In *Martinez (Ernesto)*, the Ninth Circuit also looked to the decision of the trial court and found that its analysis, which took into account the fact that Martinez's violent childhood was several years removed from the crime and therefore accorded the

circumstance "little weight," "illustrate[d] how an objective factfinder would have ruled." 926 F.3d at 1236. In Spears's case, the Arizona Supreme Court itself objectively assessed the mitigating evidence and found that Spears's childhood PTSD was entitled to limited weight because the murder was deliberate and planned rather than impulsive. *Spears*, 184 Ariz. at 293–94, 908 P.2d at 1078–79.

Finally, the Ninth Circuit in *Martinez* distinguished cases where it had found prejudicial *Eddings* error by explaining that in those cases the application of a causal nexus test left a "critical void" in the defendant's "narrative." *Martinez (Ernesto)*, 926 F.3d at 1236 (quoting *Spreitz v. Ryan*, 916 F.3d 1262, 1281 (9th Cir. 2019)). No such void existed here because the Arizona Supreme Court did not disregard evidence of Spears's abusive childhood and PTSD—it was weighed along with his other mitigating evidence.

Because Spears cannot demonstrate that the *Eddings* error had a substantial and injurious effect on his sentence, he cannot establish prejudice. Accordingly, upon reconsideration of Claims 12 and 14, the Court again finds that Spears is not entitled to relief.

**3.    Stay**

Spears asks the Court to stay these proceedings while he returns to state court to exhaust Claims 15(c) and (d). (Doc. 195 at 16.) The request is denied.

A district court is authorized to stay a petition in "limited circumstances" to allow a petitioner to present unexhausted claims to the state court without losing the right to federal habeas review pursuant to the relevant one-year statute of limitations. *Rhines v. Weber*, 544 U.S. 269, 273–77 (2005). *Rhines* applies only to mixed petitions—those containing both exhausted and unexhausted claims. *See King v. Ryan*, 564 F.3d 1133, 1139–40 (9th Cir. 2009). Accordingly, a *Rhines* stay would be inappropriate if the claims for which a petitioner seeks a stay are actually exhausted. *See e.g.*, *Armstrong v. Ryan*, No. CV-15-00358-TUC-RM, 2017 WL 1152820 (D. Ariz. March 28, 2017); *White v. Ryan*, No. CV-09-2167PHX-FJM-LOA, 2010 WL 1416054, *12 (D. Ariz. March 16, 2010) ("Because

1   the Petition in this case contains claims that are either actually or technically exhausted, it

2   is not a mixed Petition and *Rhines* does not apply.").

3        As explained above, Claim 15(c) and (d) are exhausted. Spears's petition is not

4   mixed, so *Rhines* is inapplicable and Spears is not entitled to a stay.

5                              **CERTIFICATE OF APPEALABILITY**

6        Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, an applicant

7   cannot take an appeal unless a certificate of appealability has been issued by an appropriate

8   judicial officer. Rule 11(a) of the Rules Governing Section 2254 Cases provides that the

9   district judge must either issue or deny a certificate of appealability when it enters a final

10  order adverse to the applicant. If a certificate is issued, the court must state the specific

11  issue or issues that satisfy 28 U.S.C. § 2253(c)(2).

12       Under § 2253(c)(2), a certificate of appealability may issue only when the petitioner

13  "has made a substantial showing of the denial of a constitutional right." This showing can

14  be established by demonstrating that "reasonable jurists could debate whether (or, for that

15  matter, agree that) the petition should have been resolved in a different manner" or that the

16  issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*,

17  529 U.S. 473, 484 (2000).

18       The Court finds that reasonable jurists could debate its resolution of the remanded

19  claims.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

## CONCLUSION

2          For the reasons stated above,

3          **IT IS ORDERED** denying relief on remanded Claims 15(c), 15(d), 12, and 14.

4          **IT IS FURTHER ORDERED** denying Spears's request for evidentiary

5   development.

6          **IT IS FURTHER ORDERED** denying Spears's request for a stay. (Doc. 195).

7          **IT IS FURTHER ORDERED** that a certificate of appealability is granted with

8   respect to each of the remanded claims.

9          Dated this 12th day of February, 2024.

10

11

12

                                   Honorable Stephen M. McNamee
13                                 Senior United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28